IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| ETIENNE BARKSDALE, | )<br>) |
| Plaintiff | ) C.A. No. 23-cv-263 Erie<br>) |
| v. | )<br>) |
| | ) RICHARD A. LANZILLO |
| DEPARTMENT OF CORRECTIONS, et al, | ) Chief United States Magistrate Judge<br>)<br>) |
| | ) |
| Defendants | ) RE: ECF NO. 30<br>) |

**MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS**

I.   Background

Plaintiff Etienne Barksdale, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this pro se action against the DOC and two DOC officials employed at its State Correctional Institution at Forest ("SCI-Forest")—Superintendent Irwin and Corrections Officer Hicks.[1] *See* ECF No. 6. Barksdale's Complaint asserts Eighth Amendment and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983, a claim under the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and an assault and battery claim under Pennsylvania law. All claims are based on allegations that Defendant Hicks discharged oleoresin capsicum ("OC") spray into Barksdale's cell on two occasions despite Defendants' knowledge that he suffers from asthma, hypertension, and mental health issues. *See id.*

---

[1] Barksdale is currently incarcerated at the DOC's State Correctional Institution at Fayette. At all times relevant to this action, he was housed at SCI-Forest.

Defendants have moved for partial judgment on the pleadings as to (1) Barksdale's claims against Superintendent Irwin and the DOC, (2) his Fourteenth Amendment claims against all Defendants, and (3) his claims for monetary damages against the DOC and the individual Defendants in their official capacities. ECF No. 31. They argue that (1) Barksdale's claims against Irwin fail because he has not alleged facts to support Irwin's personal involvement in any actionable conduct; (2) Barksdale's Fourteenth Amendment claim is both barred by the "more specific provision" rule and unsupported by factual allegations demonstrating that he had a liberty interest protected by the Fourteenth Amendment; and (3) the Eleventh Amendment bars Barksdale's claim for money damages against the DOC and its officials in their official capacities. Although Defendants' motion requested judgment on the pleadings generally, their brief did not challenge the legal sufficiency of Barksdale's Eighth Amendment excessive force claim or his state-law assault and battery claim against Hicks. Accordingly, the Court will not reach the merits of those claims.

For the reasons discussed below, the Court will grant Defendants' motion.

II.   Standard of Review

"A motion for judgment on the pleadings under Rule 12(c) 'is analyzed under the same standards that apply to a Rule 12(b)(6) motion.'" *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quoting *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations of the complaint and views them in a light most favorable to the plaintiff. *See, Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (citing *Worldcom, Inc. v. Graphnet, Inc.*,

343 F.3d 651, 653 (3d Cir.2003). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While a complaint does not require detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions. *Id.* at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts alleged in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.")

Finally, because Barksdale is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the Court can reasonably read his pro se pleading to state a valid claim upon which relief can be granted, it will do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See, Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully

drawn and should be read "with a measure of tolerance"). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted).

   III.   Discussion

   A. The Complaint does not allege facts sufficient to support any claim against Defendant Irwin.

Barksdale's § 1983 claims against Irwin are based solely on his supervisory position within the prison and his involvement in the prison's administrative review process. A successful § 1983 plaintiff must prove that a defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 667 (2009) ("In a § 1983 suit ..., each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Because this requirement applies with equal force to § 1983 claims against supervisory officials, "[s]upervisory liability cannot be based solely upon the doctrine of respondeat superior." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 377 (1976)). Instead, "there must be affirmative conduct by the supervisor that played a role in the [subordinate's wrongful conduct]." *Id.* At the pleading stage, the plaintiff must allege facts to support an inference that the supervisor personally directed or had actual knowledge of and acquiesced in the subordinate's misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Allegations of participation or actual knowledge and acquiescence ... must be made with appropriate particularity." *Id.* This includes place and time allegations. *Evancho*, 423 F.3d at 354. A plaintiff's mere hypothesis that an individual defendant

4

had personal knowledge of or involvement in depriving the plaintiff of his rights is insufficient to establish a supervisor's personal involvement. *Id.*

Here, Barksdale alleges that Irwin had both actual and constructive knowledge of his corrections officers' inappropriate use of OC spray on inmates with asthma in the RHU. *See* ECF No. 6. He also asserts that Irwin learned of the practice through various grievances and that he "acquiesced to his subordinates[']" conduct. *Id.* at 11. These conclusory assertions, however, are unsupported by allegations of fact and, therefore, do not raise a plausible inference that Irwin knew of and acquiesced in Hicks' alleged use of excessive force or that Hicks acted pursuant to a policy or custom adopted or condoned by Irwin. Similarly, Barksdale's allegations that he did not receive proper medical care after his exposure to OC spray do not support an inference of Irwin's personal involvement. The Complaint does not allege facts to support that Irwin was involved in Barksdale's care or had knowledge of the specifics of his care.

Furthermore, courts in this Circuit distinguish between non-medical prison officials—typically corrections officers—and medical prison personnel—doctors, nurses, and other medical care providers. *Williams v. Doe*, 2017 WL 4680636, *3 (E.D. Pa. Oct. 18, 2017). Where an inmate is under the care of medical personnel, non-medical prison officials normally cannot be viewed as acting with deliberate indifference to the inmate's medical needs. *See, Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (finding that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").

Barksdale identifies Irwin as the Superintendent at SCI-Forest and alleges that he had knowledge of corrections officers' use of OC spray on asthmatic inmates based on his review of inmate grievances. But the use of OC spray is not a per se violation of the Eighth Amendment. *Passmore v. Ianello*, 528 Fed. Appx. 144, 147-48 (3d Cir. 2013) (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)). Barksdale alleges that Hicks twice discharged OC spray into his cell after Barksdale had covered his cell windows. Barksdale does not allege that these incidents induced an asthma attack or that prison medical personnel had not cleared him for the use of OC spray. Instead, he alleges that exposure to OC spray caused him "physical and psychological stress to which routinely stimulated Plaintiff's heart with the hormone epinephrine (i.e. Adrenaline), the principal blood pressure-raising hormone, along with Cortisol, which is a hormone produced by the adrenal cortex (sic), and to which its levels in his blood became elevated in response to the aforesaid physical and psychological stress caused by him being consistently sprayed with OC." ECF No. 6 at ¶ 20. These physiological responses are common among individuals exposed to OC spray, whether they suffer from asthma or other medical conditions. They do not alone evidence that the use of OC spray is medically contraindicated or unreasonably dangerous. Thus, while OC spray invokes physiological responses that are decidedly unpleasant, its use is not categorically prohibited in the presence of inmates who suffer from asthma. *See Davis v. Brown*, 556 Fed. Appx. 87, 91 (3d Cir. 2014); *Banks v. Mozingo*, 423 Fed. Appx. 123, 126-27 (3d Cir. 2011) (noting that the use of pepper spray or mace "does not in itself amount to an Eighth Amendment violation"); *Jackson v. Beard*, 2016 WL 3621279, at *8 (M.D. Pa. Mar. 31, 2016) (noting that "courts have consistently found that an isolated discrete use of pepper spray does not state an Eighth Amendment claim"). Therefore, even if the Court were to accept Barksdale's conclusory allegation that Irwin was aware that OC spray had been used on or in the presence of asthmatic inmates, this

alone would not support an inference that he condoned a policy of excessive force or deliberate indifference to prisoners' serious medical needs. Therefore, because Barksdale has not alleged facts to support that Irwin personally participated in any alleged violation of his constitutional rights, judgment on the pleadings will be entered as to all claims against Irwin.[2]

> B. Barksdale's Complaint fails to allege facts to support a liberty interest protected by Fourteenth Amendment procedural due process, and any Fourteenth Amendment substantive due process claim is barred by the more specific provision rule.

Like his Eighth Amendment claim, Barksdale bases his Fourteenth Amendment claim on the same two instances when Hicks used OC spray against him. *See* ECF No. 6 at 30-32. It is unclear whether he claims that this conduct violated his Fourteenth Amendment procedural due process rights or his substantive due process rights. In either case, his claim fails.

To state a procedural due process claim, the inmate-plaintiff must allege facts to support that he has a liberty or property interest that is protected by the Fourteenth Amendment. *Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (citations omitted); *see also, Montanez v. Sec'y Dep't of Corr.*, 773 F.3d 472, 482 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)). If the plaintiff demonstrates a protected interest, the Court must then determine what process is necessary to protect it. *See Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 438 (3d Cir. 2020) (emphasis omitted) (quoting *Williams v. Sec'y Pennsylvania Dep't of*

---

[2] To the extent Barksdale asserts a claim against Irwin or Hicks under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, it fails as a matter of law because Title II of the ADA does not authorize individual liability. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).

7

*Corr.*, 848 F.3d 549, 559 (3d Cir. 2017)); *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Here, Barksdale asserts a liberty interest based on the adverse effects he experienced because of his exposure to OC spray. *See* ECF No. 6 at 30-32. But exposure to OC spray and its resulting adverse effects may support a protected liberty interest only if they imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. "The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary... subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." *Passmore*, 528 Fed. Appx. at 147 (quoting *Soto*, 744 F.2d at 1270). And an inmate's asthma does not preclude the use of OC spray where medical personnel have determined that the inmate's condition is not sufficiently severe to makes its use unreasonably dangerous to the inmate. *See Jones v. Wetzel*, 2017 WL 4284416, at *9 (M.D. Pa. Sept. 27, 2017), *aff'd*, 737 Fed. Appx. 61 (3d Cir. 2018). Pennsylvania law also recognizes that OC spray is a reasonable tool available to corrections officers to respond to an inmate's refusal to comply with legitimate directions. *See* 61 Pa. C.S.A. § 5907. This statute provides:

> Officers and employees of the department that are issued oleoresin capsicum spray under subsection (a) may use the spray in accordance with department policy, including: (1) in any situation where verbal direction given to inmates has failed and staff may have to use physical force to maintain or regain control; (2) when an inmate barricades or arms himself and cannot be approached without danger to personnel and the inmate; or (3) when it is determined that a delay in establishing control would constitute a hazard to the inmate or other individuals or would result in a disturbance or property damage.

61 Pa. C.S.A. § 5907.

Under the facts alleged here, Hicks' use of OC spray cannot be considered an atypical and significant hardship. Barksdale acknowledges that Hicks used OC spray only after he covered the

window of his cell in violation of prison regulations. To the extent Barksdale asserts that use of OC spray was objectively excessive under the circumstances, his claim is properly addressed under the Eighth Amendment. But the facts alleged do not support a pre-deprivation right to procedural due process under the Fourteenth Amendment.

To the extent Barksdale's Fourteenth Amendment claim is based on substantive due process, it is precluded by the "more-specific-provision rule." Under this rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (clarifying prior holding in *Graham v. Connor*, 490 U.S. 386 (1989)). As noted, Barksdale's due process claim is based on the same conduct on which he bases his excessive force claim. As the Eighth Amendment specifically covers excessive force claims under its prohibition of cruel and unusual punishment, Barksdale's Fourteenth Amendment substantive due process claim is barred by the more-specific-provision rule. *See, Betts v. New Castle Youth Dev. Ctr*, 621 F.3d 249, 260-61 (3d Cir. 2010) (dismissing substantive due process claim based on the same conditions that were the basis for an Eighth Amendment claim).

### C. The Complaint fails to allege facts sufficient to state an ADA claim against the DOC.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a claim under Title II of the ADA, the plaintiff must allege facts to support that: (1) he is disabled within the meaning of the statute, (2) he was "qualified" to

9

participate in a service, program, or activity of a public entity, and (3) he was excluded or not allowed to benefit from, or subjected to discrimination in the service, program, or activity because of his disability. Assuming for purposes of Defendants' motion that Barksdale's alleged asthma and other medical conditions rendered Barksdale disabled, his ADA claim nevertheless fails because he has not alleged facts to support that the DOC excluded him from or discriminated against him in any service, program, or activity because of his disability. Indeed, Barksdale has not identified any service, program, or activity offered by the DOC and for which he was qualified and from which he was excluded. The absence of factual allegations to support this fundamental element precludes a viable Title II claim. *See Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 275 (3d Cir. 2020) (holding that the service, program, or activity element is "at the foundation of ... [a] Title II claim ... [as] a necessary first step to determining whether his claim is cognizable"). Because Barksdale has not alleged facts to support this essential element, he has failed to state a cognizable claim under the ADA.

> D. Eleventh Amendment immunity bars Barksdale's claims for monetary damages against the DOC and against Hicks and Irwin in their official capacities.

All claims for monetary damages against the DOC and against Hicks and Irwin in their official capacities must be dismissed because each enjoys Eleventh Amendment immunity from such claims. As this Court recently explained:

> The Eleventh Amendment proscribes actions in the federal courts to recover damages against states, their agencies, and state officials acting within their official capacities. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651, (1974) (state employees acting in their official capacity). A state, state agency, or state official is subject to suit for damages in federal court only if: (1) the state has waived its Eleventh Amendment immunity, see *Kentucky v. Graham*, 473 U.S.

> 159 (1985), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits. *See Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001).

*Mitchell v. Jones*, 2022 WL 2657365, at *3 (W.D. Pa. Mar. 9, 2022), *report and recommendation adopted*, 2022 WL 2063256 (W.D. Pa. June 8, 2022). *See also, Beale v. Wetzel*, 2015 WL 2449622 (W.D.Pa. 2015) (dismissing official capacity claims against DOC officials). Pennsylvania has not waived its immunity under the Eleventh Amendment. *See* 42 Pa. Const. Stat § 8521(b) ("Nothing contained in this subchapter [on actions against Commonwealth parties in civil actions and proceedings] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"). Congress also has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *See Durkin v. Pennsylvania Dep't of Lab. & Indus.*, 2023 WL 5984339, at *3 (W.D. Pa. Sept. 14, 2023). The DOC is a department of the Commonwealth, and Irwin and Hicks are employees of the DOC. Consequently, Barksdale cannot maintain any claim for monetary damages against the DOC or Irwin or Hicks in their official capacities.[3]

---

[3] The DOC is also immune from Barksdale's state-law claims under state-law sovereign immunity. Pennsylvania law affords the Commonwealth and its agencies and employees broad immunity from most state-law tort claims. *See* 1 Pa. Cons. Stat. § 2310. In 42 Pa. Cons. Stat. § 8522(b), the General Assembly identified nine narrow statutory exceptions to sovereign immunity, none of which applies here. Sovereign immunity from state-law claims also extends to Commonwealth employees, provided they acted "within the scope of their duties.'" *Larsen v. State Employees' Ret. Sys.*, 553 F.Supp.2d 403, 420 (M.D. Pa. 2008). Conduct of an employee is within the scope of employment if "'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits....'" *Brautigan v. Fraley*, 684 F.Supp.2d 589, 593-94 (M.D. Pa. 2010). But "'a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification.'" *Allen v. Hollowood*, 2024 WL 36967, at *4 (W.D. Pa. Jan. 3, 2024) (citing *Abney v. Younker*, 2019 WL 7812383, at *9 (M.D. Pa. Oct. 3, 2019), *report and recommendation adopted*, 2020 WL 488894 (M.D. Pa. Jan. 30, 2020) (collecting cases)) (additional citations omitted). Defendants' brief does not argue for dismissal of the assault and battery claim against Hicks. Accordingly, the Court will not address whether sovereign immunity protects him from this claim.

IV.     Conclusion

For the reasons discussed above, the Court will grant Defendants' motion for partial judgment on the pleadings and dismiss all claims against Irwin and the DOC, Barksdale's § 1983 claims for monetary damages against the DOC and against Hicks and Irwin in their official capacities, his ADA claim against all Defendants, and his Fourteenth Amendment claim against all Defendants. The following claims will be dismissed with prejudice: Barksdale's § 1983 claims for money damages against the DOC and against Hicks and Irwin in their official capacities, his Fourteenth Amendment procedural and substantive due process claims, and his ADA claim to the extent it is asserted against Hicks or Irwin. Any attempt to amend the Complaint to cure the defects in these claims would be futile. Barksdale's Eighth Amendment supervisory liability claim against Irwin and his ADA claim against the DOC will be dismissed without prejudice because the Court cannot say with certainty that he cannot cure the deficiencies of these claims by amendment. Barksdale's Eighth Amendment excessive force claim and his assault and battery claim against Hicks are not the subject of Defendants' motion or this Opinion and, therefore, will proceed regardless of whether Barksdale files an Amended Complaint.

A separate Order will follow.

DATED THIS 27th day of December, 2024.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE